Rullán, Plaintiff and Appellant, *v.* Vázquez, Defendant and Appellee.

Appeal from the District Court of Aguadilla in an Action to Vacate Foreclosure Proceedings.

No. 2482.—Decided July 28, 1923.

Mortgage—Foreclosure—Evidence—Self-serving Declaration—Hearsay Evidence.—There is no principle of evidence which excludes ''self-serving declarations'' as such. The question with reference to such statements is always whether or not they come within any of the well recognized exceptions to the rule as to hearsay.

Id.—Id.—Taxation—Exemption.—Mortgages without interest were not exempt from taxation under the Act of January 31, 1901, known as the Hollander Act.

Id.—Id.—Id.—This was an appeal from a judgment dismissing an action to vacate certain foreclosure proceedings. *Held:* That in the face of such an overwhelming preponderance of the evidence in favor of the plaintiff, a passing reference to a negligible conflict and to the deportment of witnesses upon the stand is not enough to sustain the judgment appealed from.

The facts are stated in the opinion.

*Messrs. J. D. Rodríguez* and *S. Suau* for the appellant.

*Messrs. García Méndez & García Méndez* for the appellee.

Mr. Justice Hutchison delivered the opinion of the court.

The court below, after a trial on the merits, dismissed an action to vacate certain foreclosure proceedings and to cancel the mortgage for reasons stated as follows:

''Plaintiff herein, Raimundo Rullán, alleges:

''1. That he is the owner of a rural property of 25 *cuerdas* in the ward of Río Prieto de Lares, valued at $1,800 and purchased by him at a judicial public sale, said propetry being recorded in the registry of property.

''2. That defendant Justiniano Vázquez instituted special foreclosure proceedings against the plaintiff to recover a sum of money payable in five instalments on a mortgage for 2,200 *pesos* of the currency in circulation in 1887, which Agustín Planell y Ruiz created on the property in question, being required to pay the said amount as follows: To José Justiniano, 750 *pesos,* that is, 150

*pesos* in January of 1888 and of each subsequent year up to and including 1892, and to Francisco Serra Castañer, 1,450 *pesos* in the same month of the following years comprised between 1893 and 1901, both inclusive. In the said proceeding defendant alleged that the amounts or instalments that fell due in January of the years 1888 to 1892 have not been paid. 3. That on April 17, 1918, this court made an order that a demand for payment be made on the defendant, plaintiff herein, which was served on him on the 24th of the same month and year. 4. That the instalments whose payments is demanded by José Justiniano Vázquez have been due for more than 30, 29, 28, 27 and 26 years and no attempt has been made to recover, wherefore the foreclosure proceeding has prescribed. 5. That, through the agency of Federico Aymat, José Justiniano Vázquez collected, and Agustín Planell y Ruiz paid, the instalments row claimed, and the former signed a receipt which is copied into the complaint and dated February 7, 1888; that in 1889 and in 1890, Agustín Planell paid the instalments corresponding to said years to José Justiniano Vázquez and in 1891 the instalment due to José Justiniano Vázquez for that year and the year following, the latter in advance, which amounts were paid in the establishment of Juan Alemañy & Co. and the proper receipts given, which receipts were destroyed or lost during an incendiary attack by a band of men in the year 1898; and that the consecutive instalments due to Francisco Serra were paid by him in advance in the year 1894. And he concludes with a prayer that judgment issue declaring the foreclosure proceeding to be null and void, directing that the mortgage debt be cancelled and that the defendant be mulcted in costs, disbursements and attorney fees.

"The defendant answered the complaint admitting the facts hereinbefore set forth under Nos. 1, 2 and 3 and that part of No. 4 averring that the instalments claimed have been due for more than 30, 29, 28, 27 and 26 years, but denying the other facts thereof, and likewise denying the fifth allegation. And as new matter, the defendant alleges: That the instalments sought to be recovered have not prescribed; that they have not been paid in any form whatsoever; that the credit has not been assigned and is in force, has not been cancelled and is not pending cancellation according to the books of the registry of property; that by deed executed in 1887, Agustín Planell y Ruiz purchased of José Justiniano Vázquez and his wife the property in question and the payment of the purchase price was, according to agreement, to be made each year from 1888 to 1901, both inclusive; that the last instalment having become due

in 1901 the action has not prescribed, since it was not stipulated in the deed that the failure to pay any instalment, or any number of instalments, when due should make the mortgage recoverable, for which reason the defendant was not in a position to enforce his right until 1901, when the last instalment became due, and that the defendant has made various attempts to recover the instalments claimed in the foreclosure proceeding but without success. And he concludes with a prayer that judgment issue dismissing the complaint with costs, disbursements and attorney fees against the plaintiff.

"There are two questions to be decided in this case: 1. Has the debt been paid?—2. Has the action prescribed?

"The documentary evidence offered shows that by public instrument executed on April 16, 1887, before Notary Víctor Martínez, the herein defendant José Justiniano Vázquez and his wife, María Decideria Justiniano y Olán, sold Agustín Planell Ruiz a rural property containing 25 acres, being the property referred to in the complaint and situated in the Prieto ward, for the sum of 2,200 *pesos* of the currency at that time, which amount was to be paid at the periods and to the persons hereinafter mentioned, namely: to the vendor, José Justiniano, 750 *pesos* payable in instalments of 150 *pesos* in the month of January of each of the years from 1888 to 1892, both inclusive, and to Francisco Serra Castañer, 1,450 *pesos*, to whom the same shall be paid for account of the vendor at the rate of 181 *pesos* 25 cents in January of each of the years 1893 to 1901, both inclusive, and to secure the said amounts a mortgage was created on the property sold, which lien it was stipulated should remain in force until legally and properly cancelled; that the vendee was to receive an informal acknowledgment of each partial payment made until the last payment to each of the interested parties was effected, when the proper deed of acquittance and cancellation was to be issued; that the mortgages in favor of José Justiniano Vázquez and Francisco Serra Castañer were recorded on August 6, 1887, in the Registry of Property of Aguadilla; that according to a public instrument executed on August 25, 1894, before Notary Víctor Martínez, the said Francisco Serra Castañer gave a deed of acquittance to Agustín Planell y Ruiz for the said sum of 1,450 *pesos*, which was presented in the office of the resgistrar of property, and on September 12, 1894, the liquidator stated that the same would appear in the book of liquidations under its correlative number 110; that by public instrument executed on May 28, 1900, before Notary Salvador Picornell, Agustín Planell Ruiz

mortgaged the said property to G. Bernart & Co. and Pablo Vidal y Roselló in the sum of 1,614 *pesos* and 43 cents, provincial money, in the proportion stipulated in the said deed, the mortgagor reciting that the property 'was not burdened by lien or encumbrance at that time, as was shown by the deed of acquittance executed by Francisco Serra Castañer in favor of the party Agustín Planell y Ruiz and legalized by Notary Víctor Martínez of this city on August 25, 1894, which appears in the book of liquidations of the registry of the district under its correlative number 110 and said Planell y Ruiz claims and avers that he had not subsequently created any lien or encumbrance on the said property,' and that on July 30, 1915, and by deed executed before Notary José D. Rodríguez, the marshal of the District Court of Aguadilla sold to Raimundo Rullán y Pons, the plaintiff, at public auction, the rural property referred to herein by virtue of a foreclosure proceeding instituted by the plaintiff himself against the succession of Agustín Planell y Ruiz, which sale was recorded in the registry of property.

"The plaintiff likewise offered in evidence a receipt reading as follows: 'Received from Agustín Planell the sum of one hundred and fifty *pesos* which has been handed me by Federico Aymat, and I agree to deliver to him a deed of acquittance when the last payment is made according to arrangement.—At the request of José Justiniano Vázquez who does not know how to write.—Federico Aymat.—February 7, 1888.' As can be seen, this writing does not state the consideration of the payment referred to nor has any witness testified on this point, wherefore it lacks all probatory value and moreover is a paper in which the same person, Federico Aymat, signs at the request of the creditor José Justiniano Vázquez for the receipt of a sum of money from Agustín Planell which Federico Aymat himself had given him. It is, in other words, a receipt in which the same person, Federico Aymat, is converted into an agent or attorney in fact of the debtor for the delivery of the amount of the debt to the creditor and on account of the latter's inability to sign, this receipt was made for a sum of money which he himself delivered.

"The plaintiff also offered in evidence a schedule for the valuation of property for purposes of taxation subscribed and sworn to by José Justiniano Vázquez on March 25, 1901, in order to show that the debt did not exist on that date since it was not set out in the schedule by the creditor. The Tax Law in force at that time was the one approved by the Legislative Assembly of Porto Rico on January 21, 1901, which is generally known as the Hollander

Act. Under the provisions of that Act, Section 3 (m), mortgage amounts without interest were exempt from the payment of taxes. It is not shown in the deed of sale and mortgage executed by Vázquez to Planell that the debt shall bear interest, wherefore the court is of the opinion that it was not necessary to include the same in the statement. Moreover, since the Hollander Act is no longer in force and effect, the obstacle to recovery, if such existed, is eliminated.

"As regards the mortgage of May 28, 1900, in which the maker, Agustín Planell y Ruiz, states that the property is not burdened by any lien or encumbrance whatever, reference is made, as appears from the deed itself, to the interest of Francisco Serra Castañer, which had been paid as evidenced by the acquittance of August 25, 1894. Moreover, that statement would be a self-serving declaration by a party and would have no probatory effect at all.

"It must not be overlooked in this case that when Agustín Planell paid Francisco Serra Castañer the amount of his interest in the year 1894, the latter gave him a receipt, which was not done in connection with the interest of José Justiniano Vázquez, defendant herein, which precedes or is earlier than that of Serra Castañer. If the debt of Justiniano was paid in the year 1891, why is it that no receipt was demanded as in the case of the other creditor, Serra Castañer, in the year 1894?

"The plaintiff affirms that in an armed assault of which the debtor Agustín Planell was the victim, all the receipts and documents in his possession were lost, but there is no evidence to show that the receipts claimed to have been signed by the defendant were actually among those papers. Notwithstanding the alleged loss or disapperance of the documents, the plaintiff offers in evidence the first receipt said to have been signed by the creditor, that is, the defendant, on February 7, 1888, and this conflict in the plaintiff's evidence has not been explained by him.

"We will not take up the second issue, that is, whether the action has prescribed.

"The statute applicable to the case is article 142 of the Mortgage Law that went into effect in Porto Rico on May 1, 1880, corresponding to article 134 of the present Mortgage Law, of August 29, 1893, which provides that 'The mortgage action shall prescribe after 20 years from the time such action could have been brought in accordance with the recorded deed.'

"The characteristics of all mortgages are: (1) Indivisibility, (2) inseparability and (3) duration. The first is what we shall

consider in connection with this case.    The court is of the opinion
that the mortgage in question is indivisible, since it must continue
as a whole until the ,total amount secured by the mortgage is
extinguished and because the fact that there were two separate
creditors does not constitute such division, according to section
1761 of the Revised Civil Code which takes the place of article
1860 of the old Civil Code.

"But aside from this, the question presents itself as to whether
the defendant creditor was in a position to enforce his right upon
the maturity of any of the instalments or whether he was in such
a position in the year 1894 when Serra Castañer signed a receipt
for the instalments due to him or whether such position was estab-
lished in 1901, when, according to the mortgage, the last instalment
became due, and when the mortgage was to be totally extinguished.
The fact that in a case where there are several creditors secured by
a single mortgage the amounts of which are to be paid in instal-
ments, a debtor elects to pay a certain creditor, can never affect
the original terms of the contract among which is included the
appropriate condition of recovery.    The advantages that said cred-
itor might propose, might be an incentive to the debtor to pay him
in preference to another creditor whose instalment took precedence,
but could have no bearing upon the time from which prescription
began to run.

"In view of the terms in which the mortgage is drawn, the court
is of the opinion that it was not the intention of the parties to
bring any action or institute any mortgage proceeding until the
total amount due had matured, or, in other words, until the term
fixed for the payment of the last instalment maturing in 1901 had
elapsed.    See Succession Firpo v. Succession Pino et al., 14 P. R. R.
100.

"On the other hand, in the hypothesis that the prescription did
not begin to run from 1901 but from the date alleged by the plaintiff,
the court is of the opinion that the mere lapse of the legal period
does not give rise to prescripition, since it is necessary to declare
and show that this period has not been interrupted.    This fact has
not been shown by the plaintiff; but on the other hand the de-
fendant has submitted proof to show the attempts he made to recover
from Agustín Planell, without being able to collect.    And it is to
be inferred from such evidence that those attempts were made
during the legal period necessary to defeat prescription.

"Independently of all these conclusions of fact and of law, the
court is of the opinion that the evidence is contradictory in a

general sense, but considering the circumstances here and the manner in which the witnesses have testified, resolves the conflict in favor of the defendant."

Beyond the bare stipulation that the purchaser would receive simple receipts for payments as made and a formal cancellation on payment of the last instalment, we find in the deed and mortgage no evidence of any intention that foreclosure proceedings should not be instituted prior to the date of maturity of the final instalment. Nor does the brief for appellee shed any new light on the subject. The opinion in the *Firpo Case,* 14 P. R. R. 100, does not necessarily sustain the proposition announced by the trial judge. But for the purposes of this opinion it may be conceded, without holding, that the mere lapse of time does not bar an action and that in the instant case the statutory period had not elapsed.

A careful examination of all the evidence, however, has convinced us beyond any reasonable doubt that the instalments, foreclosure of which was attempted, were paid as alleged in the complaint. A complete rehearsal and analysis of all the testimony would serve no very useful purpose.

Aymat, who signed the receipt for the first instalment, was a responsible business man of comparatively large means and good standing. He was a brother-in-law of the defendant herein, with whom he also had business relation. At the time of the trial both Aymat and Planell had been dead for about 10 years. The statement made by Aymat that he signed the receipt at the request of the brother-in-law was not therefore subjected to the test of cross-examination.

This is equally true, however, of the statement which it was admitted defendant would have made if called as a witness, to the effect that he had never authorized the receipt. The difference lies in the circumstance that the lips of defendant were not sealed and, save the statement by his

counsel that it had not been possible to summon him, no explanation of his failure to appear in person was offered.

Agapito Guzmán, a former business partner of defendant, negotiated the payment of the last two instalments payable to defendant at the instance of defendant who was in need of money. A discount of $25 on the second of these two instalments was the inducement offered for payment thereof in advance. Alemañy advanced the money needed to take advantage of this offer.

Guzmán and a son of Planell both testified to the payment of these two instalments by Alemañy or in the presence of Alemañy and of one Dupont, who made out the receipt.

Guzmán, the former business associate of defendant, was at the time the local commissioner of the *barrio*. Neither Alemañy nor Dupont were called by defendant, nor was their testimony shown to be for any reason unobtainable. No effort was made to impeach or discredit any of the witnesses for plaintiff.

The official investigation made on the day following the night attack on the dwelling of Planell in 1898 leaves no doubt as to the fact of the raid. Planell, who had been severely beaten and whose beard had been plucked, was interviewed on that day at the house of Antonio Alemañy to which he had been removed, and complained to the authorities of the loss of all his papers, including receipts for payment of mortgage instalments. A box full of papers had been taken from the house and papers were scattered through the neighboring coffee groves. Planell was informed of the circumstance last mentioned and advised to make an effort to recover these papers. This incident occurred in November during a period of heavy rainfall.

In the circumstances it would seem hardly reasonable to require of plaintiff that, 10 years after the death of Planell, eye-witnesses should be produced to state in so many words that the missing receipts were included among the lost

papers and that the receipt adduced in evidence, itself a document more than 30 years old and coming from the proper custody, was among the papers recovered.

*Non constat* that Planell ever executed any mortgage other than the two mentioned by the trial judge, *supra,* or that he ever owed defendant herein any money other than the deferred payments forming part of the purchase price of the 25 acres involved in the present controversy.

In passing we may add, as well here as elsewhere, that there is no principle of evidence which excludes ''self-serving declarations'' as such. The question with reference to such statements is always whether or not they come within any one of the well recognized exceptions to the rule as to hearsay. And without going further into this phase of the question of evidence, it will suffice to say that, assuming the fact of payment to have been abundantly established as it was by other evidence, the statement by Planell in the later mortgage that the property was free from encumbrance was at least a significant circumstance corroborative of the son's testimony to the effect that Planell understood the notarial instrument executed by Francisco Serra Castañer in 1894, was all that was needed in the way of cancellation. Such interpretation, by one unfamiliar with legal matters, of the rather ambiguous phraseology in which the original deed and mortgage was couched is quite plausible, if not probable, and furnishes a reasonable explanation of the failure to demand a like cancellation from defendant herein.

A careful reading of the law of 1901, on the other hand, will suffice without argument to show that it is not open to the construction placed thereon by the court below. The mortgage in question was not exempt.

Nor are we concerned with the effect of the repeal of the statutory penalty as a removal of the bar to foreclosure.

The point involved in the failure to render the mortgage for taxes is that, in the absence of any explanation, we are

left to choose between the inference that the mortgage had been paid, and the alternative conclusion that not having been paid, the mortgagee, without any reason to anticipate possible rehabilitation through a future repeal of the law, elected to cut himself off from any and all remedy or hope for relief at the hands of any court of justice in the event of continued non-payment.

Defendant, as we have already intimated, did not appear at the trial. The answer was not verified by him but by his attorney.

Testimony showing more recent admissions and evasive answers to questions propounded by the son of Planell in the presence of a notary, who later appeared as attorney for plaintiff herein, was not contradicted.

In order to avoid a continuance, plaintiff admitted at the trial that defendant if present would testify that he had never been paid and had never authorized the receipt given by Aymat.

The testimony referred to by the trial judge as tending to show a demand for payment prior to the death of Planell was extremely vague and unsatisfactory. Moreover, it was more than offset by other testimony in rebuttal. But even otherwise we would feel constrained to hold that plaintiff was entitled to some explanation as to why defendant, notwithstanding his impecunious condition, should be content with an annual verbal request for payment throughout a period of eight or ten years, followed by a silent interval extending over another decade ensuing upon the death of his debtor, before instituting foreclosure proceedings.

In the absence of any such explanation, the only logical conclusion is that the proceedings sought to be annulled by plaintiff herein were the result of an afterthought, prompted perhaps by the foreclosure and sale of the property under the later mortgage.

In the face of such an overwhelming preponderance of

the testimony, a passing reference to a negligible conflict and to the deportment of witnesses upon the stand is not enough to sustain the judgment appealed from. It must be

*Reversed.*

Chief Justice Del Toro and Justices Wolf and Aldrey concurred.

Mr. Justice Franco Soto took no part in the decision of this case.